2013R01330/JLH

FILED

SEP 12 2019

AT 8:30 __145 pm__ M
WILLIAM T. WALSH
CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| | : | |
| v. | : | Criminal No. 18-462 |
| | : | |
| SAMUEL KHAIMOV | : | 18 U.S.C. § 2 |
| YANA SHTINDLER | : | 18 U.S.C. § 371 |
| RUBEN SEVUMYANTS | : | 18 U.S.C. § 1343 |
| ALEX FLEYSHMAKHER | : | 18 U.S.C. § 1347 |
| | | 18 U.S.C. § 1349 |

## S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

### Definitions and Relevant Individuals

1.     At various times relevant to this Superseding Indictment:

a.     The "Prime Aid Pharmacies" were specialty pharmacies located in Union City, New Jersey ("Prime Aid Union City") and Bronx, New York ("Prime Aid Bronx").

b.     Your Care Pharmacy ("Your Care") was a specialty pharmacy located in Bronx, New York.

c.     The Prime Aid Pharmacies and Your Care were under common or related ownership, as detailed below.  The pharmacies prepared and supplied, among other things, expensive specialty medications, which were prescribed to treat a variety of conditions, including Hepatitis C, Crohn's disease, and rheumatoid arthritis.

d.      Defendant YANA SHTINDLER ("SHTINDLER") was the "Administrator" of Prime Aid Union City.  SHTINDLER also directed the tax preparation for Prime Aid Bronx and aided in the formation of Your Care. SHTINDLER resided in New York with her husband and co-defendant, SAMUEL KHAIMOV.

e.      Defendant SAMUEL "SAM" KHAIMOV ("KHAIMOV") was a licensed pharmacist and co-owner of Prime Aid Union City.  KHAIMOV was the lead pharmacist of Prime Aid Bronx and had an ownership interest in Your Care.

f.      Defendant RUBEN SEVUMYANTS ("SEVUMYANTS") was the operations manager of Prime Aid Union City.  SEVUMYANTS resided in Marlboro, New Jersey.

g.      Defendant ALEX FLEYSHMAKHER ("FLEYSHMAKHER") was a Prime Aid Union City employee.  FLEYSHMAKHER also had an ownership interest in Prime Aid Bronx.  He resided in Morganville, New Jersey.

h.      "Individual-1" was a co-owner of Prime Aid Union City. Individual-1 had an ownership interest in Prime Aid Bronx, and was an investor in Your Care.

i.      "Individual-2" was a Prime Aid Bronx and Your Care employee.

j.      "Individual-3" was a former sales representative of Prime Aid Union City.

2

    k.    "Individual-4" was an employee in a doctor's office in Jersey City, New Jersey.

    l.    "Patient-1" resided in Collinsville, Connecticut.

    m.    "Patient-2" resided in Darby, Pennsylvania.

    n.    "Patient-3" resided in Norwich, Connecticut.

    o.    "Patient-4" resided in Port Jervis, New York.

    p.    "Patient-5" resided in Ridgewood, New York.

    q.    "Patient-6" resided in Bronx, New York.

    r.    "PBM-1" was a pharmacy benefit manager ("PBM") with its principal place of business in St. Louis, Missouri.

    s.    The "Shipping Company" was a private commercial shipping and logistics company that Prime Aid Union City exclusively used to ship mail-order prescription drugs to patients that lived beyond a certain distance from the Union City, New Jersey location.

    t.    "Company-1" was a tequila company owned by SHTINDLER and KHAIMOV.

### The Medicare and Medicaid Programs

    u.    The Medicare Program ("Medicare") was a federally funded health care program, which provided payment for reasonable and medically necessary medical services for certain individuals, primarily the elderly, blind, and disabled.  Medicare was administered by the United States Department of Health and Human Services, Center for Medicare and Medicaid Services

("CMS").  Individuals who received Medicare benefits were referred to as Medicare beneficiaries.

       v.    Medicare programs were separated into different "parts," each of which covered a different category of benefits available under Medicare. Medicare "Part D" subsidized the cost of prescription drugs for Medicare beneficiaries in the United States.  In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan.  Medicare drug plans were operated by private health insurance companies approved by Medicare.

       w.    Medicaid Programs (collectively, "Medicaid") were jointly funded, federal-state health insurance programs for certain individuals, including but not limited to low-income adults.  Medicaid was administered by individual states, according to federal requirements.  All states, the District of Columbia, and the United States territories had a Medicaid program. Individuals who received Medicaid benefits were referred to as Medicaid beneficiaries.

       x.    Medicare and Medicaid were "health care benefit programs," as defined by 18 U.S.C. § 24(b) that affected commerce.  Medicare and Medicaid were also "Federal health care programs," as defined by 42 U.S.C. § 1320a-7b(f).

       y.    Medicare and Medicaid rules generally permitted specialty pharmacies, such as Prime Aid Union City, to submit claims for prescription specialty medication before the prescription had been dispensed; however, the applicable rules required that specialty pharmacies, including Prime Aid Union

4

City, supply the patient with the product within 14 days of the claim using either a commercial delivery service, in-house delivery service by the pharmacy, or by patient pick up.

### Pharmacy Benefit Managers

z.      In order to bill Medicare Part D for prescription drugs, the pharmacy had to enter into a retail network agreement either directly with a Medicare drug plan or with one or more "pharmacy benefit managers," or PBMs.  A PBM acted as an intermediary on behalf of Medicare drug plans and private healthcare insurance providers.  Through a plan's PBM, a pharmacy joined the plan's network.  Thus, when a pharmacy received a prescription for a Part D beneficiary, the pharmacy then submitted a claim for reimbursement to the PBM that represented the beneficiary's Medicare drug plan.  The PBM determined whether the pharmacy was entitled to reimbursement for each claim and periodically paid the pharmacy for outstanding claims.  Without entering into a retail network agreement with a Medicare drug plan or PBM, a pharmacy could not be reimbursed for prescription medications provided to the beneficiary whose prescription plan was administered by that plan or PBM.

aa.     In order to enter into a retail network agreement with a PBM, a pharmacy was required to submit an application listing, among other things, the ownership, control, and management of the pharmacy, and the names of any of its related pharmacies.  Such information was material to PBMs because it could impact a PBM's decision to allow a pharmacy into its network.

## Count One
### (Conspiracy to Commit Health Care Fraud)

2.    The allegations contained in paragraph 1 of this Superseding Indictment is hereby repeated, realleged, and incorporated as if fully set forth herein.

3.    From at least as early as in or around 2013 through on or about September 11, 2017, in the District of New Jersey, and elsewhere, the defendants,

**YANA SHTINDLER,**
**SAMUEL KHAIMOV, and**
**RUBEN SEVUMYANTS,**

did knowingly and willfully conspire and agree with each other and others to execute, and attempt to execute, a scheme and artifice to defraud the Medicare and Medicaid programs, each a "health care benefit program" as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

### Object of the Conspiracy

4.    The object of the conspiracy was for defendants SHTINDLER, KHAIMOV, SEVUMYANTS, and others to unlawfully enrich themselves by submitting and causing the submission of false and fraudulent claims to

Medicare and Medicaid, among other health care benefit programs, for expensive prescription medications that Prime Aid Union City never dispensed or shipped to patients.

### Manner and Means of the Conspiracy

5.      It was part of the conspiracy that defendants SHTINDLER, KHAIMOV, and SEVUMYANTS were the principal decision makers for billing and reimbursements for Prime Aid Union City.

6.      It was further part of the conspiracy that Prime Aid Union City received prescriptions from doctors for expensive specialty medications, and those prescriptions often entitled patients to receive refills for the same medications.

7.      It was further part of the conspiracy that KHAIMOV, SEVUMYANTS, and others obtained prescriptions to be billed by Prime Aid Union City by paying kickbacks and bribes to certain doctors and doctors' employees.

8.      It was further part of the conspiracy that Prime Aid Union City dispensed or shipped the original prescription to patients, but then subsequently billed for refills without confirming with the patients that they wanted those refills, and without actually dispensing those refills to patients. In certain circumstances, Prime Aid Union City also billed for initial prescriptions without ever shipping or dispensing those prescriptions to patients.

9.     It was further part of the conspiracy that defendants SHTINDLER, KHAIMOV, and SEVUMYANTS discovered that certain Prime Aid employees had reversed claims for prescriptions and refills that had been billed but never dispensed to patients, and subsequently admonished such employees, instructing them not to reverse claims even if prescriptions and refills had not been dispensed to patients.

10.     It was further part of the conspiracy that, after PBMs alerted defendant SHTINDLER of a practice of billing but not dispensing certain prescription drugs at Prime Aid Union City, defendant SHTINDLER falsely indicated to PBMs and health insurance providers that Prime Aid Union City would take corrective actions to stop these fraudulent practices.

11.     It was further part of the conspiracy that, in response to audits of Prime Aid Union City by PBMs and health insurance plans, defendant SHTINDLER and others instructed one or more Prime Aid Union City employees to falsify records submitted to PBMs.

12.     It was further part of the conspiracy that defendant SEVUMYANTS forged shipping records of the Shipping Company to make it appear as if medications were shipped to the patients when, in fact, they were not.

13.     It was further part of the conspiracy that, in response to audits and terminations by certain PBMs based upon Prime Aid Union City's fraudulent practice of billing for prescriptions that were not dispensed to patients, SHTINDLER, KHAIMOV, and others continued to unlawfully profit from those same PBMs by opening new pharmacies and concealing the true

8

ownership of those pharmacies to obtain lucrative contracts with PBMs they otherwise would not have obtained.

14.     It was further part of the conspiracy that, in order to profit from this scheme, Prime Aid Union City billed and collected payments for more than $65,000,000 of prescription medication that Prime Aid Union City never even purchased from its wholesalers or suppliers, and never had in its possession or control, and thereby, could not have dispensed to its patients.

15.     It was further part of the conspiracy that SHTINDLER and KHAIMOV diverted a portion of these illegal profits for their personal use and to their tequila company, Company-1.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH FIVE
### (Health Care Fraud)

16.     The allegations contained in paragraphs 1 and 5 through 15 of this Superseding Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

17.     On or about the dates set forth with respect to each Count, in the District of New Jersey, and elsewhere, the defendants,

**YANA SHTINDLER,**
**SAMUEL KHAIMOV, and**
**RUBEN SEVUMYANTS,**

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud the Medicare and Medicaid programs, each a "health care benefit program" as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, as described below, each constituting a separate count of this Superseding Indictment:

10

| Count | Approximate Date Range | Fraudulent Claim to Medicare and Medicaid |
|-------|------------------------|--------------------------------------------|
| Two | March 3, 2015 | Claim for approximately $5,876.66 for one prescription for Patient-1, which prescription was never dispensed or shipped. |
| Three | March 9, 2015 | Claim for approximately $50,371.60 for two prescriptions for Patient-2, which prescriptions were never dispensed or shipped. |
| Four | July 5, 2016 | Claim for approximately $8,348.68 for one prescription for Patient-3, which prescription was never dispensed or shipped. |
| Five | August 1, 2016 | Claim for approximately $32,092.70 for one prescription for Patient-4, which prescription was never dispensed or shipped. |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT SIX
### (Wire Fraud Conspiracy)

18.     The allegations contained in paragraphs 1 and 5 through 15 of this Superseding Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

### Overview of the Conspiracy

19.     Defendants SHTINDLER, KHAIMOV, and others sought to and did enter retail network agreements with PBMs for pharmacies, such as the Prime Aid Pharmacies, that were owned and operated by SHTINDLER, KHAIMOV, FLEYSHMAKHER, Individual-1, and others.  These PBM retail network agreements were crucial for pharmacies, such as the Prime Aid Pharmacies, because without them, a pharmacy could not be reimbursed for prescription medications dispensed to patients who were within the PBM's network.

20.     Over the course of the conspiracy, the Prime Aid Pharmacies lost retail network agreements with PBMs because of, among other things, billing for prescriptions that were never dispensed.  To continue accessing PBM networks and profiting from reimbursement payments made by PBMs, SHTINDLER, KHAIMOV and others opened new pharmacies and lied to the PBMs about the true ownership of those pharmacies in order ensure that in approving such pharmacies, the PBMs did not know the affiliation between the terminated pharmacies and the new pharmacies.  SHTINDLER, KHAIMOV and others then transferred patients from the terminated pharmacies to the new pharmacies to continue their fraudulent billing scheme.

## The Wire Fraud Conspiracy

21.     From at least as early as the Fall of 2013 through at least in or around September 2015, in the District of New Jersey and elsewhere, defendants,

**YANA SHTINDLER, and
SAMUEL KHAIMOV,**

did knowingly and intentionally conspire and agree with each other and others to devise a scheme and artifice to defraud PBM-1, and to obtain money and property from PBM-1, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

## Object of the Conspiracy

22.     It was the object of the conspiracy for defendants SHTINDLER, KHAIMOV, and others to open and operate new pharmacies, including Your Care, for the purpose of, among other things, obtaining retail network agreements with PBMs under false and fraudulent presentences, in order to gain access to PBM networks, and to profit from reimbursement payments made by PBMs for medications prescribed to patients in those networks.

## Manner and Means of the Conspiracy

23.     It was part of the conspiracy that, in or around 2013, defendants SHTINDLER, KHAIMOV, and others profited by owning pharmacies, such as

13

the Prime Aid Pharmacies, through which, among other things, they obtained retail network agreements with PBMs and received reimbursement payments for medications prescribed to patients within the PBMs' networks.

24.    It was further part of the conspiracy that, in or around late 2013 and early 2014, in response to scrutiny from one or more PBMs regarding the billing practices of the Prime Aid Pharmacies, defendants SHTINDLER, KHAIMOV, and others began the process of opening a new pharmacy, called Your Care.

25.    It was further part of the conspiracy that defendants SHTINDLER, KHAIMOV, and others concealed and attempted to conceal that Your Care and the Prime Aid Pharmacies were under common ownership by, in or around early 2014, listing Individual-2 as Your Care's sole owner when, in fact, Individual-2 was merely an employee with no actual ownership interest in Your Care.

26.    It was further part of the conspiracy that, from at least as early as in or around May 2014, Your Care concealed and attempted to conceal from PBM-1 the relationship between Your Care and the Prime Aid Pharmacies by, among other things, submitting false, fraudulent, and forged documents to PBM-1.

27.    It was further part of the conspiracy that, in or around August 2014, after Prime Aid Union City was terminated from PBM-1's network for, among other things, its practice of billing for prescription medications that were not shipped or dispensed to patients, Your Care continued to conceal

14

from PBM-1 the relationship between Your Care and the Prime Aid Pharmacies, including Prime Aid Union City.

28.    It was further part of the conspiracy that, in or around October 2014, Your Care and PBM-1 entered into a retail network agreement under the fraudulent and false pretenses that, among other things, Your Care was solely owned by Individual-2 and had no affiliation with the Prime Aid Pharmacies, when, in fact, Your Care was affiliated with the Prime Aid Pharmacies and was owned by defendant KHAIMOV and others, materially precluding PBM-1 from accurately evaluating whether to enter into a retail network agreement with Your Care.

29.    It was further part of the conspiracy that, beginning in or around October 2014, even though Prime Aid Union City had been terminated from PBM-1, SHTINDLER, KHAIMOV, and others continued to profit off of PBM-1 by, among other things, causing patients from PBM-1's network to be transferred from Prime Aid Union City to Your Care.  Your Care then billed and collected payments from PBM-1 for those patients' prescriptions.  For example, from in or around November 2013 to in or around August 2014, Prime Aid Union City repeatedly billed PBM-1 for prescription medication and refills for Patient-5. Then, after PBM-1 was terminated Prime Aid Union City, prescriptions for Patient-5 were transferred to Your Care, and from in or around November 2014 to in or around September 2015, Your Care repeatedly billed PBM-1 for refills for Patient-5.

30.     As a result of the conspiracy and the scheme to defraud, defendants SHTINDER, KHAIMOV and others fraudulently caused PBM-1 to pay in excess of $34,000,000 to Your Care for prescription reimbursements.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS SEVEN THROUGH NINE
**(Wire Fraud)**

31.    The allegations contained in paragraphs 1, 5 through 15, 19 and 20, and 23 through 30 of this Superseding Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

32.    On or about the dates set forth with respect to each Count, in the District of New Jersey, and elsewhere, defendants,

**YANA SHTINDLER, and**
**SAMUEL KHAIMOV,**

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud PBM-1, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing or attempting to execute such scheme and artifice to defraud, defendants did cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, namely the mail deliveries and wire transfers described below, each constituting a separate count of this Superseding Indictment:

| Count | Approximate Date of Wire Transmissions | Wire Transmissions |
|-------|----------------------------------------|---------------------|
| Seven | November 18, 2014 | Causing a prescription for Patient-5 to be billed by Your Care to PBM-1, via interstate wire. |
| Eight | January 19, 2015 | Causing a prescription for Patient-6 to be billed by Your Care to PBM-1, via interstate wire. |
| Nine | September 17, 2015 | Causing a prescription for Patient-5 to be billed by Your Care to PBM-1, via interstate wire. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TEN
### (Conspiracy to Defraud the United States and
### to Pay Health Care Kickbacks)

### The Conspiracy

33.     The allegations contained in paragraphs 1, 5 through 15, 19 and 20, and 23 through 30 of this Superseding Indictment are hereby repeated, realleged, and incorporated as if fully set forth herein.

34.     From at least as early as in or around 2009 through at least in or around August 2017, in the District of New Jersey and elsewhere, defendants,

**SAMUEL KHAIMOV,
ALEX FLEYSHMAKHER, and
RUBEN SEVUMYANTS,**

did knowingly and willfully conspire and agree with Individual-3, Individual-4, and others to commit certain offenses against the United States, that is, to knowingly and willfully pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, in exchange for the furnishing and arranging for the furnishing of items and services, namely, the referral of prescriptions for patients to Prime Aid Union City and Prime Aid Bronx, for which payment was made in whole or in part under a Federal health care program, namely, Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2).

### Object of the Conspiracy

35.     The object of the conspiracy was for defendants KHAIMOV, FLEYSHMAKHER, SEVUMYANTS, Individual-3, and others to fraudulently obtain additional revenue for the Prime Aid Pharmacies by paying kickbacks

and bribes to one or more doctors, members of doctors' offices, and others in exchange for sending or referring prescriptions for patients to the Prime Aid Pharmacies.

## Manner and Means of the Conspiracy

36.     It was part of the conspiracy that defendant KHAIMOV directed employees of the Prime Aid Pharmacies, including Individual-3, to make payments to doctors, including cash payments, in order to induce the doctors to send prescriptions to the Prime Aid Pharmacies.

37.     It was further part of the conspiracy that Individual-3 arranged for Prime Aid Union City to pay for an employee to work in a doctor's office to induce that doctor's office to send prescriptions to Prime Aid Union City.

38.     It was further part of the conspiracy that defendant FLEYSHMAKHER repeatedly provided items of value, including cash payments and payments by check and wire, to Indvidual-4 in order to induce Individual-4 to steer prescriptions from the doctor's office where Individual-4 worked to Prime Aid Union City.

39.     It was further part of the conspiracy that defendant SEVUMYANTS repeatedly provided items of value, including expensive meals and a designer bag, to Individual-4 in order to induce Individual-4 to steer perceptions from the doctor's office where Individual-4 worked to Prime Aid Union City.

40.     It was further part of the conspiracy that the prescriptions generated through this scheme were paid in whole or in part by Medicare or Medicaid.

## Overt Acts

41.     In furtherance of the conspiracy, and in order to effect the object thereof, defendants KHAIMOV, FLEYSHMAKHER, SEVUMYANTS, committed, and caused to be committed, the following acts in the District of New Jersey and elsewhere:

       a.  In or around 2014, KHAIMOV directed an employee to deliver a bribe payment to a doctor whose office was in Queens, New York.

       b.  On or about May 12, 2015, SEVUMYANTS paid approximately $350 for a meal for Individual-4 and her family, which payment was a kickback and bribe to Individual-4.

       c.  On or about August 3, 2017, FLEYSHMAKHER wired approximately $3,000 to Individual-4's bank account, which wire payment was a kickback and bribe to Individual-4.

All in violation of Title 18, United States Code, Section § 371.

## FORFEITURE ALLEGATION AS TO COUNTS ONE, TWO, THREE, FOUR, FIVE AND TEN

1.      Upon conviction of the Federal health care offenses (as defined in 18 U.S.C. § 24) alleged in Counts One, Two, Three, Four, Five and Ten of this Indictment, the defendants charged in each respective count shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offenses (as defined in 18 U.S.C. § 24) alleged in Counts One, Two, Three, Four, Five and Ten.

## FORFEITURE ALLEGATION AS TO COUNTS SIX THROUGH NINE

2.      As a result of committing the wire fraud offenses charged in Counts Six through Nine of this Indictment, the defendants charged in each respective count shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the violations of Title 18, United States Code, Sections 1349 and 1343, and all property traceable thereto, alleged in Counts Six through Nine of this Indictment.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided
without difficulty;

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p) (as

incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)), to forfeiture of any

other property of the defendant up to the value of the above-described

forfeitable property.

CRAIG CARPENITO
United States Attorney

CASE NUMBER: 18-462 (MAS)

# United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

**SAMUEL KHAIMOV**
**YANA SHTINDLER**
**RUBEN SEVUMYANTS**
**ALEX FLEYSHMAKHER**

# SUPERSEDING INDICTMENT FOR

18 U.S.C. § 2
18 U.S.C. § 371
18 U.S.C. § 1343
18 U.S.C. § 1347
18 U.S.C. § 1349

**CRAIG CARPENITO**
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

*Joshua L. Haber*
*ASSISTANT U.S. ATTORNEY*
*(973) 645-3978*